**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

JOSEPH WELBORN,             )
                                   )
         **Plaintiff,**         )
                                   )
**v.**                         )       **No. 10-2528-STA-cgc**
                                   )
**SHELBY COUNTY GOVERNMENT,**  )
                                   )
         **Defendant.**      )

---

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant's Motion for Summary Judgment (D.E. # 16), filed on September 16, 2011. Plaintiff filed an Answer to Defendant's Motion (D.E. # 19) on October 28, 2011. Defendant then filed a Reply to Plaintiff's Answer (D.E. # 20) on November 10, 2011. For the following reasons, Defendant's Motion is **DENIED**.

### BACKGROUND

On July 7, 2009, Joseph Welborn ("Plaintiff") filed a sworn charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the Shelby County Government's ("Defendant") Engineering Department had discriminated against him on the basis of his age. (Def.'s Mot. for Summ. J., D.E. # 16-3, at 1.) On the EEOC's form, Plaintiff checked the box for "discrimination based on age." (*Id.*) He was discharged by his employer on June 30, 2009. (*Id.*) He alleged that the reason for his termination was "alleged lack of work," and that Defendant indicated that selections for termination were based on job performance. (*Id.*) Plaintiff also averred that at least four younger, similarly situated employees were retained and

1

that at least two of them had less seniority than he. (*Id.*) Plaintiff is the oldest of all similarly situated employees in his department terminated by Defendant on June 30, 2009. (*Id.*) On April 23, 2010, the EEOC issued Plaintiff a notice of his right to sue. (*Id.* at 2.)

On July 20, 2010, Plaintiff filed a Complaint alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA") as amended. (Compl. ¶ 1.) Plaintiff requested backpay in the form of his lost wages and benefits plus an additional amount of liquidated damages. (*Id.* at 5.) Plaintiff also requested a permanent injunction prohibiting Defendant from discriminating against employees based on their age, as well as judgment against Defendant and his reasonable attorney's fees, costs, disbursements, and pre- and post-judgment interest. (*Id.*) The following facts are not in dispute unless otherwise noted.

Defendant hired Plaintiff as a construction inspector on November 1, 1999. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 1.) Plaintiff was born on October 1, 1936, and he was sixty-three years old when he was hired by Defendant. (*Id.* at 2.) On June 12, 2009, Plaintiff received a memo from a human resources administrator notifying him that he was being laid off to reduce operational expenses. (*Id.* at 1.) Plaintiff was seventy-two years old at this time. This memo stated the following:

> This is to advise you that you will be laid off from your position effective June 30, 2009. Your layoff is a result of job position reductions in your job classification in your department in accordance with County layoff procedures. This action unfortunately is a last resort in reducing operational expenses.

(*Id.* at 1-2.) While Plaintiff does not dispute that he received the memo or that the quoted text is an accurate recitation of the memo's contents, Plaintiff disputes the substance of the memo. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 1-2.) According to Plaintiff, the layoff was not performed in accordance with Defendant's published layoff procedures. (*Id.* at 2.)

These layoff procedures, documented as Shelby County Policy # 411, state that "[t]he order of layoffs shall be based upon performance ratings, length of service, and other pertinent factors under the formula established by the Administrator." (*Id.*, D.E. # 19-1, at 5.) This policy also requires emergency, temporary, provisional, or probationary employees to be "separated" before permanent employees in the same class or position are "separated" as part of a layoff. (*Id.*)

The policy states that employees are to be laid off using the following criteria in the following order: (1) all temporary employees and employees in original probationary status within the affected classifications; (2) service rating based on the performance rating for the fiscal year ending June 30, 2008;[1] (3) all employees with documented discipline from January 1, 2007 until the time of the layoff; (4) seniority based on the employee's time in his or her assigned position; and (5) seniority based on the employee's adjusted county service date. (*Id.* at 7.)

According to Plaintiff, Defendant did not adhere to this procedure; thus, he disputes the veracity of the contents of the memo. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 2.) However, neither party disputes that Defendant employed eighteen people in its Engineering Department prior to the June 30, 2009, layoffs ("the June 2009 RIF"). (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 2.) After the June 2009 RIF, the Engineering Department had only eleven employees. (*Id.*)

---

[1]     Under this criterion, the Administrator was to identify all employees in all job classifications with a performance appraisal rating less than 2.55. (*Id.* at 7.) Then the Administrator was to correlate the lowest rated performers with the department functions and job classifications to be scaled back. (*Id.*)

The June 2009 RIF resulting in Plaintiff's loss of employment was initially proposed in February of 2009 in an effort to balance a projected budget shortfall for the fiscal year beginning on July 1, 2009. (*Id.*) The Engineering Department where Plaintiff worked was one of Defendant's divisions required to lay off staff to reduce operating costs. (*Id.* at 3.) Michael Oakes, the Shelby County Engineer ("Oakes"), decided which Engineering Department employees would be laid off as part of the county-wide reduction in force ("RIF"). (*Id.*)

Defendant submits that when Oakes determined which employees to lay off, he considered each employee's length of service as well as any specialized knowledge, experience, and training that might be useful to the Engineering Department's continued operations. (*Id.*) Plaintiff does not dispute that Oakes articulated this rationale, but he does dispute that Oakes followed this rationale. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 2.) Plaintiff points out that three of the four individuals selected for the layoff were over sixty years old, and the fourth employee was on probation and was required to be fired. (*Id.*) Moreover, Plaintiff asserts that if Defendant had followed the procedures detailed in Policy # 411, at least one employee over age sixty would have been retained. (*Id.* at 2-3.)

Both parties use comparative language to describe the employees' statistical information, but the Court finds such descriptions to be impractical and misleading. Therefore, the Court has prepared the following chart summarizing the Engineering Department's employees' performance ratings, age at the time of the June 2009 RIF, date of entry into service, and position to help clarify the information relevant to the articulated standards and procedures in

Policy # 411.[2]  The bolded individuals were laid off as part of the June 2009 RIF.  The

information in this chart is not in dispute.

| Employee Name | Performance Rating | Age at June 2009 RIF | Date of Hire | Position at June 2009 RIF |
|---|---|---|---|---|
| Randy Crawford | 3.500 | 39 | 3/1/2001 | Construction Inspector |
| **Carl Haid** | **3.444** | **60** | **3/9/1971** | **Construction Inspector** |
| **Woodrow Shinault** | **3.444** | **63** | **9/12/1966** | **Construction Inspector** |
| **Gary Smith** | **3.556** | **63** | **2/1/1999** | **Construction Inspector** |
| Eddie Thiele | 3.444 | 47 | 8/1/1980 | Construction Inspector |
| Andy Ward | 3.56 | 48 | 6/16/1995 | Construction Inspector |
| **Joseph Welborn** | **3.444** | **72** | **11/1/1999** | **Construction Inspector** |
| **Glenn Williamson** | **3.42** | **44** | **4/15/2006** | **Stormwater Inspector** |

Plaintiff relies on this information in his dispute over Oakes' consideration of each

employee's length of service, specialized knowledge, experience, and training.  He asserts that

Glenn Williamson ("Williamson") would have had to be terminated due to his probationary

status.  (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 2.)  Furthermore, Plaintiff avers

that if Defendant had followed the steps listed in Policy # 411, it would have fired Williamson,

[2]     This information can be found in Defendant's Bates-Stamped documents
accompanying its Statement of Undisputed Facts, D.E. # 16-3, at 11-41, and Exhibits 2-7 of
Plaintiff's Answer to Defendant's Motion for Summary Judgment, D.E. #s 19-2, 19-3, 19-4, 19-
5, 19-6, and 19-7.

who was on probation with a performance rating of 3.42, and some of the four remaining construction inspectors with performance ratings of 3.444: Carl Haid ("Haid"), Woodrow Shinault ("Shinault"), Eddie Thiele ("Thiele"), or Plaintiff.  (*Id.*)  Plaintiff contends that due to the hiring of Haid in 1971 and Shinault in 1966, they should have been retained in lieu of Thiele, who was hired in 1980.  (*Id.* at 2-3.)

However, at his deposition, Plaintiff testified that he had no evidence to show that Oakes did not follow his articulated considerations of length of service, specialized knowledge, experience, and training when he determined who to lay off.  (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 3.)  Defendant submits that Plaintiff did not question Oakes' good faith in trying to make the best decisions for Shelby County.  (*Id.* at 3.)  Plaintiff disputes this assertion and states that he questions whether Oakes "made the best decisions . . . from a discriminatory bias."  (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 2.)  Plaintiff reiterates that every construction inspector over age sixty was laid off as part of the June 2009 RIF.  (*Id.*)  But Plaintiff does not dispute Defendant's assertion that Oakes did not consider any employee's age in deciding who would be retained and terminated in the RIF.  (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 3.)  Nor does Plaintiff dispute that Randy Crawford ("Crawford") was the only construction inspector retained with less seniority than Plaintiff.  (*Id.* at 4.)  Crawford was hired in 2001; Plaintiff was hired in 1999.  The other two retained construction inspectors, Thiele and Andy Ward ("Ward"), were hired in 1980 and 1995 respectively.

Defendant argues that Oakes based his decision to retain Crawford due to his work as Acting Sewer Inspector and attendance at a forty-hour long special course in sewer collection

systems. (*Id.*) Plaintiff disputes this fact to the extent that the position of Acting Sewer Inspector was not posted, advertised, or made available for any other construction inspector to seek. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 3.) Accordingly, Plaintiff points out that he was not given the opportunity to compete for that position. (*Id.*)

Defendant submits that Crawford's qualifications differed from Plaintiff's. According to Defendant, Crawford worked on pump systems in the U.S. Navy, and he had post-Navy experience on blowers and compressors to aerate sewage treatment plants. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 4.) While he worked for Defendant, he went underground to work on live sanitary sewer systems and pumps diverting raw sewage while the main sewer system was being repaired or replaced. (*Id.*) In the seven months prior to May 13, 2009, Crawford trained under the guidance of the mechanic who had operated the sewer system for seventeen years. (*Id.* at 5.) Crawford had also worked on similar pump systems during his time with the Navy. (*Id.*)

Plaintiff does not dispute that he never went underground to work on live and active sewer lines after they had been placed in service. (*Id.* at 4.) Nor did Plaintiff use diversion pumps in a live sewer while working for Defendant. (*Id.*) However, Plaintiff had twenty-two months of service in the U.S. Army and had worked for the U.S. Army Corps of Engineers for thirty-two years. (*Id.* at 5.) But while he worked for the Army Corps of Engineers, he did not work on any sanitary sewer systems. (*Id.*) Although Plaintiff also worked for the Town of Collierville and the City of Dyersburg, he had no hands-on experience installing a pumping system for a sanitary sewer project. (*Id.*)

In Oakes' memo explaining his choices for the Engineering Department's staff reduction, he stated that Crawford's sanitary training and experience, rather than his age, convinced him that Crawford should be retained. (*Id.* at 4.) Oakes was similarly unpersuaded by Plaintiff's higher seniority.[3] (*Id.*) Additionally, Plaintiff does not dispute that an "RFP"[4] was issued for the sanitary sewer program on June 2, 2009. (*Id.*) These repairs would have cost $145,000 if contracted out, but they would have cost Defendant's employees only $135,000 to repair. (*Id.*) Therefore, Defendant asserts that Crawford was retained in part to perform these necessary repairs.

The parties do not dispute that Plaintiff testified that he was replaced by Ward after he was laid off. (*Id.* at 6.) Plaintiff believes that Ward performed all of Plaintiff's work. (*Id.*) Defendant notes that Ward was hired in 1995, four years before Plaintiff was hired in 1999.[5] (*Id.*) Additionally, Defendant points out that Ward's performance rating was 3.56, while Plaintiff's was 3.444. (*Id.*) Plaintiff disputes this fact's implication that Ward's higher performance rating justified keeping him and firing Plaintiff. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 4.) Plaintiff points out that while Smith had a performance rating of 3.556 and Thiele had a performance rating of 3.444, Defendant terminated the employment of Smith instead of Thiele. (*Id.*) Plaintiff calls attention to Smith's age—sixty-three—and Thiele's

---

[3]     Plaintiff was hired on November 1, 1999, and Crawford was hired on March 1, 2001.

[4]     Defendant does not identify the meaning of this abbreviation. However, the Court believes that it stands for a "request for proposal," which is an early stage in the procurement process.

[5]     Ward was hired as a Sign Technician by the Shelby Court Roads and Bridges Department on June 16, 1995. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 9.) He was transferred to the Engineering Department on May 16, 2002. (*Id.*)

age—forty-seven—at the time of the June 2009 RIF. (*Id.*) Therefore, Plaintiff submits that Defendant fired an older employee and retained a younger employee.

While the parties do not dispute that Plaintiff admitted that he does not know what percentage of Ward's work was devoted to the Houston Levee Road and Bridge Project ("Houston Project") after the June 2009 RIF, Defendant submits that Plaintiff's only assignment at the time of his layoff was the Houston Project. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 6.) Although Plaintiff does not dispute that the Houston Project was Plaintiff's only project, Plaintiff points out that the project was the largest in terms of money and time in which the Engineering Department had been involved for several years. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 4.) Plaintiff states that the Houston Project went on for two years before the June 2009 RIF and continued for one year afterwards. (*Id.*)

Plaintiff contends that Ward replaced him by taking over his work. Defendant submits that Plaintiff's only evidence of this contention is two hearsay statements allegedly made by a contractor and the superintendent of the Houston Project. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 6.) While Plaintiff admits that this is the only information attested to by Defendant, Plaintiff avers that Ward admitted that he took over Plaintiff's work. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 4.) Plaintiff also contends that Ward was certified to perform field testing, and Defendant retained a testing specialist to perform this work. (*Id.* at 5.) Plaintiff further states that concrete inspection and erosion prevention and sediment control practices are not the types of work typically performed by construction inspectors. (*Id.*)

The parties do not dispute that Plaintiff testified that there were no areas in which Ward was more experienced than Plaintiff. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 7.) Defendant submits that Plaintiff never received a certificate from the American Concrete Institute. (*Id.*) Additionally, Defendant states that Plaintiff received a Level 1 certification in erosion prevention and sediment control practices, but Plaintiff has never received a Level 2 certificate in those fields. (*Id.*) Although Plaintiff admits that he did not attend the eight-hour course necessary to obtain the concrete certificate, Plaintiff submits that he attended more than eighty hours of courses covering all aspects of concrete inspection and that those courses were similar to the classes offered by the American Concrete Institute. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 5.) While Plaintiff does not dispute that he never received a Level 2 certification in erosion prevention and sediment control practices, Plaintiff submits that both Ward—who did receive the Level 2 certification—and Chris Masin ("Masin"), Ward's supervisor and the Chief Inspector with the Engineering Department, admitted that this type of certification is not typically used by construction inspectors and that construction inspectors do not perform field testing. (*Id.* at 5, 7.)

Defendant submits that Oakes decided not to fire Ward during the June 2009 RIF because he was certified in Level 1 and 2 Erosion Prevention and Sediment Control Practices and in concrete inspection by the American Concrete Institute. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 7.) Plaintiff disputes this fact because Oakes also stated that Ward would be assigned to stormwater management, traffic management, and capital improvement projects. (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 5.) Plaintiff avers that this statement is significant because he had both exceeded expectations for his

understanding of a new stormwater program in his most recent performance evaluation and been certified by the National Pollution Discharge Elimination System. (*Id.*) Ward was not certified by that body. (*Id.*) Plaintiff argued that he spent three more years in the County Engineering Office than Ward did, and that increased time allowed him to acquire more experience on capital improvement projects. (*Id.* at 5-6.) Additionally, Plaintiff derided the specialized training in ADA compliance by referring to Ward's casual description of the training. (*Id.* at 6.)

However, Plaintiff does not dispute that he has no evidence to disprove that Defendant was suffering financial difficulties in 2009 resulting in the June 2009 RIF. (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 7.) Defendant also notes that Plaintiff presented a newspaper article, published fourteen months before the June 2009 RIF, in which Sidney Chism, a County Commissioner ("Chism"), made statements about "older employees probably . . . coming to work because they enjoy it. But surely we know that productivity is not what it was when they were 22." (*Id.*) According to the article, Chism was also considering offering a buyout to employees aged sixty-five and older. (*Id.*) However, Defendant states that Oakes, the individual who made the decision to fire Plaintiff, did not consult with Chism in deciding who to lay off. (*Id.* at 8.) Additionally, Oakes was not influenced by anything Chism may have said to him. (*Id.*) Oakes averred that, before August of 2011, he was unaware of any statements made by Chism concerning a RIF in 2008 or 2009. (*Id.*)

Defendant submits that Plaintiff admitted that he had no evidence that Chism's remarks influenced the decision makers in the Engineering Department RIF in 2009. (*Id.*) Indeed, Plaintiff merely speculated that Chism's remarks influenced the decision. (*Id.*) Plaintiff disputes these assertions because, on multiple occasions during the years prior to the June 2009 RIF,

Oakes stated that he had to comply with the directives of the Mayor of Shelby County and the County Commission when laying off employees.  (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 6.)

Defendant also avers, and Plaintiff does not dispute, that Oakes asked Masin, the Chief Inspector for the Engineering Department, for his opinion as to how much the department could reduce staff and still complete its work.  (Def.'s Statement of Undisputed Material Facts, D.E. # 16-2, at 8.)  However, Defendant submits that Oakes did not ask Masin for his opinion of which employees Oakes should retain or lay off, nor did Masin volunteer his opinion as to which employees Oakes should retain or lay off.  (*Id.*)  While Defendant notes that Plaintiff alleges that, in July of 2008, Masin stated "something to that effect that 'it makes sense to keep the younger employees,'" Oakes stated that Masin never made such a statement to Oakes.  (*Id.* at 9.)

Plaintiff disputes these facts because his notes reflect that Masin made this statement in June of 2008, rather than July, to the construction inspectors rather than to Oakes.  (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 7.)  Additionally, Plaintiff argues that during the meeting when Masin allegedly made this statement, he also mentioned that Thiele, Crawford, and Williamson should be retained.  (*Id.*)  During his deposition, Masin admitted that he was sure it was mentioned that these three construction inspectors should be retained.  (*Id.*)  Plaintiff submits that this statement, "made almost a year before the layoffs actually occurred, was amazingly prescient for a person who had absolutely no involvement in the selection process." (*Id.*)

The following remaining facts are undisputed.  Plaintiff has admitted that an employer's RIF for economic reasons does not necessarily constitute age discrimination.  (Def.'s Statement

of Undisputed Material Facts, D.E. # 16-2, at 9.)  Since Plaintiff was laid off in the June 2009

RIF, the Engineering Department has not hired anyone to fill a construction inspector position.

(*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter
of law.[6]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[7]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must

present some "specific facts showing that there is a genuine issue for trial."[8]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[9]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

verdict.[10]  When determining if summary judgment is appropriate, the Court should ask "whether

---

[6]     Fed. R. Civ. P. 56(a).

[7]     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[9]     *Matsushita*, 475 U.S. at 586.

[10]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[11]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[13]

## ANALYSIS

The ADEA establishes that it is unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age, or (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .[14]

The Supreme Court has interpreted the first clause as proscribing intentional disparate treatment on the basis of age,[15] and the second clause has been interpreted as proscribing facially neutral employment practices with a disparate impact on age.[16]  In his Complaint, Plaintiff pled only disparate treatment under the ADEA.  Plaintiffs can establish disparate treatment in violation of

---

[11]     *Id.* at 251-52.

[12]     *Celotex*, 477 U.S. at 322.

[13]     *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[14]     29 U.S.C. § 623(a).

[15]     *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).

[16]     *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005).

the ADEA using either direct or circumstantial evidence.[17]  In its Motion for Summary

Judgment, Defendant asserts that because Plaintiff has not presented any direct evidence of age

discrimination, the Court should apply the ADEA's circumstantial evidence test.[18]  Plaintiff fails

to define whether he brings a claim based on direct evidence, circumstantial evidence, or both.[19]

Therefore, the Court will address each type of claim in turn.

## Disparate Treatment with Direct Evidence

To prove a disparate treatment case using direct evidence, a plaintiff would need to

present "evidence which, if believed, *requires* the conclusion that unlawful discrimination was at

least a motivating factor in the employer's actions."[20]  Examples of this direct evidence include

"a facially discriminatory employment policy or a corporate decision maker's express statement

of a desire to remove employees in the protected group."[21]  The Sixth Circuit has held that "[a]ny

discriminatory statements must come from decision makers to constitute direct evidence of

discrimination."[22]  However, the Supreme Court has stated that "there is no disparate treatment

---

[17]     *Aldridge v. City of Memphis*, 404 F. App'x 29, 40 (6th Cir. 2010).

[18]     (Def.'s Mem. in Supp. of its Mot. for Summ. J., D.E. # 16-1, at 5.)

[19]     Plaintiff's Answer to Defendant's Motion for Summary Judgment addresses his claim in the context of the *McDonnell Douglas* burden-shifting analysis, which is only applicable to ADEA claims based on circumstantial evidence.  However, because Plaintiff also presents discriminatory statements by two officials in Defendant's infrastructure, the Court finds it necessary to address both types of claims.

[20]     *Aldridge*, 404 F. App'x at 40 (emphasis in original).

[21]     *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[22]     *Geiger v. Tower Auto.*, 579 F.3d 614, 620-21 (6th Cir. 2009) (noting that after the U.S. Supreme Court's decision in *Gross v. FDL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009), if alleging an ADEA case with direct evidence, plaintiffs are required to prove by a preponderance of the evidence that age was the "but-for" cause of the challenged employer decision).

under the ADEA when the factor motivating the employer is some feature other than the employee's age" and that such factors include "an employee's pension status or seniority, [which are] empirically correlated with age."[23]

Here, Plaintiff has presented direct evidence of unlawful age discrimination. He has presented two statements: one from Chism, a County Commissioner, stating that "productivity is not what it was when [the older employees] were twenty-two," and one from Masin, the Chief Inspector for the Engineering Department, stating that "it makes sense to keep the younger employees." However, these statements were not made by Oakes, the decision maker deciding which employees to remove as part of the June 2009 RIF. Therefore, they do not qualify as direct evidence, and Plaintiff's ADEA direct evidence claim fails.

### Disparate Treatment with Circumstantial Evidence

To establish a claim of disparate treatment using circumstantial evidence, courts apply the *McDonnell Douglas* analysis used in Title VII cases.[24] Therefore, to prove a prima facie case of discrimination, plaintiffs are required to demonstrate four elements: (1) membership in a protected class, (2) subjection to an adverse employment action, (3) that they were otherwise qualified for the position they held, and (4) replacement by someone outside the protected class.[25] In the ADEA context, a plaintiff is a member of the protected class if he or she is forty

---

[23]     *Hazen Paper*, 507 U.S. at 609.

[24]     *See Geiger*, 579 F.3d at 622. In *Geiger*, the Sixth Circuit noted that while *Gross* "specifically rejected the burden-shifting framework for claims of direct evidence, . . . the Supreme Court expressly declined to decide whether the *McDonnell Douglas* test applies to the ADEA." *Id.* As such, the "*McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence." *Id.*

[25]     *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 992 (6th Cir. 2009).

years of age or older.[26]  If a plaintiff is replaced, the plaintiff's replacement must be younger than the plaintiff.[27]

If the termination arises as part of a RIF, the Sixth Circuit modifies "the fourth element to require the plaintiff to provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for impermissible reasons."[28]  A plaintiff satisfies this element if his or her evidence demonstrates that a "comparable non-protected person was treated better."[29]  The elimination of a single position is "sufficient to constitute a legitimate [RIF]."[30]  The Sixth Circuit has noted that a RIF "occurs when business considerations cause an employer to eliminate one or more positions,"[31] but "a[n] employee is not eliminated as part of a RIF when he or she is replaced after his or her discharge."[32]

A person is replaced only when another employee is hired or reassigned to perform his or her duties; if his duties are absorbed by another person or the work is redistributed among other existing employees already performing related work, he is not replaced.[33]  Nor is a person

---

[26]  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008).

[27]  *See id.*

[28]  *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (internal quotation marks omitted).  Such evidence can include management's favoring of younger workers, tendency to fire older workers, or indications in some manner that older workers were held in disfavor.  *See Puckett v. Arvin/Calspan Field Servs., Inc.*, 787 F.2d 592, at *5 (6th Cir. 1986).

[29]  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

[30]  *Lockett*, 354 F. App'x at 992.

[31]  *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

[32]  *Geiger*, 579 F.3d at 623.

[33]  *Id.*

replaced when another employee is assigned to perform the plaintiff's duties in addition to his or her own duties.[34]  Additionally, in all ADEA cases in the Sixth Circuit, a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when it is analyzing the plaintiff's prima facie case.[35]

Once a plaintiff satisfies her prima facie burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[36]  If the defendant meets that burden, the burden of production shifts back to the plaintiff to show that the defendant's nondiscriminatory explanation is a mere pretext for intentional age discrimination.[37]  There are three bases for a defendant's reason to be pretextual: (1) it has "no basis in fact," (2) it "did not actually motivate the adverse action," or (3) it "was insufficient to motivate the adverse action."[38]

The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened and is factually false.[39]  Under the second method, "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on

---

[34]     *Barnes*, 896 F.2d at 1465; *Wilson v. State of Ohio Dep't of Job & Family Servs.*, 178 F. App'x 457, 465 (6th Cir. 2006).

[35]     *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc).

[36]     *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

[37]     *Id.*

[38]     *Id.*

[39]     *Mauer v. Deloitte & Touche, LLP*, 752 F. Supp. 2d 819, 826 (S.D. Ohio 2010).

whether the employer's proffered reason for the employment action was its actual motivation."[40] If the plaintiff can show that the defendant's "proffered, nondiscriminatory reason was pretextual, . . . he would be entitled to take his claim to a jury."[41]  The third showing "ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge."[42]

If a plaintiff can establish the first or third showing, a permissive inference of discrimination arises.[43]  However, a different result arises from the second showing.  Because the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, the plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged.[44]  Thus, with the second showing, no inference of discrimination arises.[45]

Throughout this entire *McDonnell Douglas* framework, the plaintiff bears the burden of persuasion.[46]  The Supreme Court has emphasized that this burden requires plaintiffs to

---

[40]    *Wexler*, 317 F.3d at 576.

[41]    *Ercegovich*, 154 F.3d at 350 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 344 (6th Cir. 1997)).

[42]    *Mauer*, 752 F. Supp. 2d at 826 (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

[43]    *Id.*

[44]    *Id.*

[45]    *Id.*

[46]    *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

demonstrate that age was the but-for cause of their employer's adverse action.[47]  In the RIF age discrimination context, it is especially important for courts to remember that "age and years of service are analytically distinct;" because employers can take into account one without considering the other, "it is incorrect to say that a decision based on years of service is necessarily 'age-based.'"[48]

Although Defendant concedes that Plaintiff is a member of the ADEA's protected class and that he suffered an adverse employment action because he was fired, Defendant submits that Plaintiff cannot state a prima facie case of discrimination.[49]  Defendant asserts that Plaintiff cannot prove that he was replaced by a less-qualified younger individual and that Plaintiff cannot meet the additional RIF burden of coming forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in his termination.[50]  Moreover, even if Plaintiff can state a prima facie case, Defendant submits that it has presented a legitimate nondiscriminatory reason for Plaintiff's firing: cost cutting.[51]  Defendant then avers that Plaintiff has no competent evidence from which a jury could reasonably find that its articulated reasoning for firing Plaintiff was pretextual.

---

[47]      *Gross*, 129 S. Ct. at 2351 n.4.

[48]      *Hazen Paper*, 507 U.S. at 611.

[49]      (Def.'s Mem. in Supp. of its Mot. for Summ. J., D.E. # 16-1, at 5.)

[50]      (*Id.*)

[51]      (*Id.* at 6.)

In response, Plaintiff asserts that he can present evidence from which a reasonable juror could determine that his age was a factor in his discharge.[52]  Arguing that fact finders can consider an employer's deviation from its own policies as evidence of a discriminatory bias, Plaintiff argues that Oakes' failure to follow Policy # 411's requirements resulted in age discrimination as no non-probationary employee over sixty was retained.[53]  Interestingly, Plaintiff states:

> [T]he layoff of construction inspectors which occurred in the Engineering Department wound up exclusively affecting individuals over the age of [sixty]. While this fact along may not be enough to survive a properly [pled] Motion for Summary Judgment, it is submitted by Plaintiff that this fact, taken in conjunction with the fact that a proper application of Defendant's published layoff procedure would have resulted in the retention of workers over [sixty], is sufficient to permit a finder of fact to conclude that age was a factor in the discharge decision which affected [Plaintiff].[54]

However, Plaintiff also asserts that he can present evidence showing that Defendant's legitimate nondiscriminatory reason for his discharge was pretextual.[55]  Such evidence would also show that age was a factor in Plaintiff's removal.[56]  Plaintiff's asserted evidence includes his longer service with the Engineering Division, his favorable performance review for understanding the new stormwater program, and the fact that, although he was certified in fewer areas than Ward, those certifications were irrelevant to the position of construction inspector.[57]

---

[52]    (Pl.'s Answer to Def.'s Mot. for Summ. J., D.E. # 19, at 9.)

[53]    (*Id.* at 10.)

[54]    (*Id.* at 12.)

[55]    (*Id.*)

[56]    (*Id.*)

[57]    (*Id.* at 12-14.)

In reply, Defendant reiterates that Oakes did not consider anyone's age in deciding who to fire in the June 2009 RIF.[58]  Regarding Masin's statements, Defendant submits that Masin did not decide which employees to retain in the Engineering Department's June 2009 RIF and that his statements are irrelevant to this case because they are "no more than vague, ambiguous, and isolated remarks that lend no support to [Plaintiff's] claim of age discrimination."[59] Additionally, Defendant argues that Masin's statements do not present direct or circumstantial evidence of bias sufficient to allow a reasonable factfinder to infer that Oakes considered age in his decision regarding the June 2009 RIF.[60]  Defendant points out that Oakes would still would have fired Plaintiff if Oakes had based his decision solely on seniority or performance rating.[61] Finally, Defendant pointed out that Plaintiff did not plead disparate impact in his complaint and that he has presented no statistically significant data to support a disparate impact theory of discrimination.[62]

### Prima Facie Case

The parties appear to assume that Defendant's firing of five construction inspectors was a RIF.  Because the fourth element of an ADEA prima facie case depends on whether a RIF occurred, the Court must first determine if a RIF did indeed occur in Plaintiff's case.  The parties

---

[58]  (Def.'s Reply to Pl.'s Answer, D.E. # 20, at 1.)

[59]  (*Id.* at 2-3.)

[60]  (*Id.* at 3.)

[61]  (*Id.* at 4.)

[62]  (*Id.* at 5.)  Defendant also attacks Plaintiff's assertions that he attended eighty hours of concrete inspection school for not presenting certificates, identifying locations or dates of the schools, or alleging that his personnel file contains such information.  (*Id.* at 6.)

do not dispute that business considerations required Defendant to eliminate positions across its various divisions. Accordingly, whether a RIF occurred will depend on whether Plaintiff was replaced after he was fired. If he was replaced, he was not eliminated as part of a RIF, and he will not have to meet the higher standard to make out a prima facie case.[63]

The parties do not dispute that Plaintiff's only assignment at the time of the June 2009 RIF was the Houston Project. Additionally, while Plaintiff admitted that he does not know how much of Ward's work was devoted to the Houston Project, Ward testified that after June 2009, he was the construction inspector on that project.[64] Oakes indicated that upon Ward's retention, he would be assigned to stormwater management, traffic management, and capital improvement projects. Thus, Ward took on at least part of the work for Plaintiff's sole project in addition to other job duties in stormwater and traffic management. Plaintiff's work was absorbed by Ward and possibly other remaining construction inspectors. Additionally, Defendant has not hired another construction inspector since the June 2009 RIF. Therefore, the Court finds that Plaintiff was not replaced and was eliminated as part of a RIF, and the Sixth Circuit's modified fourth element of the prima facie case applies.

Neither party disputes that Plaintiff satisfies the first element of the prima facie case because he was seventy-two at the time of the June 2009 RIF. Nor do they dispute that he suffered an adverse employment action. Therefore, the Court finds that Plaintiff has satisfied these two elements of the prima facie case. Additionally, the Court finds that Plaintiff meets the third element of the prima facie case: he was qualified for the position he held. Plaintiff had

---

[63] *See Geiger*, 579 F.3d at 623.

[64] (Dep. of Andy Ward, D.E. # 19-9, at 8.)

worked for Defendant as a construction inspector for nearly nine years, and he had achieved his performance expectations in the most recent performance review. Therefore, Plaintiff was qualified for his position.

As to the fourth element, requiring Plaintiff to provide additional direct, circumstantial, or statistical evidence tending to indicate that Defendant singled him out for impermissible reasons, the Court finds that Plaintiff has presented enough circumstantial evidence to satisfy this element. He presented circumstantial evidence of age discrimination in the form of the statements of Chism and Masin, and his evidence raises the inference that Defendant did not completely abide by its own firing policies. Accordingly, the Court finds that Plaintiff has stated a prima facie case of age discrimination based on circumstantial evidence.

### Legitimate Nondiscriminatory Reason

Because Plaintiff has stated a prima facie case, Defendant must articulate a legitimate nondiscriminatory reason to shift the burden of production back to Plaintiff. Here, Defendant has come forward with an acceptable legitimate nondiscriminatory reason for its termination of Plaintiff: cost cuts due to a budget deficit. Accordingly, the Court finds that Defendant has satisfied its burden of production with regard to this element.

### Pretext

Thus, the burden of production shifts to Plaintiff to present evidence of pretext sufficient to create a question of fact. If Plaintiff cannot do so, he cannot survive summary judgment. At the outset, the Court notes that Plaintiff would be unable to show that Defendant's asserted nondiscriminatory reason has no basis in fact; it is undisputed that Defendant had to reduce its operating costs by terminating several of its employees. Second, the Court notes that

Defendant's budgetary shortfall would not be insufficient to motivate the firing of Plaintiff. Defendant was required to cut costs, and all of the construction inspectors were paid the same salary. Therefore, Defendant cut costs by firing four construction inspectors. Thus, if Plaintiff is to survive summary judgment, it will be because he has put forward evidence showing that Defendant's budget cuts "did not actually motivate the adverse action."

For several reasons, the Court finds that questions of fact remain as to whether Defendant's articulated nondiscriminatory reason actually motivated its firing of Plaintiff. Plaintiff has put forth evidence calling into question the actual motivation of Defendant's selection of employees to fire as part of the June 2009 RIF in the Engineering Department. First, the discriminatory statements made by Chism and Masin mostly predict which employees in the Engineering Department were terminated as part of the June 2009 RIF. Second, Oakes' reasons for retaining Crawford do not match the mandatory order of considerations in Policy # 411. Third, Oakes relied on Ward's possession of certificates for erosion prevention and sediment control practices in addition to those possessed by Plaintiff to justify retaining Ward, but those qualifications were not the sort necessary to be a proficient construction inspector. Fourth, Plaintiff had experience in the same areas of work that Ward was assigned to perform after Plaintiff was terminated.

Of course, it is possible that this evidence may not be a pretext for age discrimination; whether Defendant's legitimate nondiscriminatory reason is pretextual depends on the inferences drawn from the facts presented. But it is not for the Court to decide between the parties' differing versions of these implications and material facts. Therefore, because the Court finds

that material facts are in dispute as to Plaintiff's ADEA disparate treatment claim based on circumstantial evidence, Defendant's Motion for Summary Judgment is **DENIED**.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 28, 2011